**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| TERRENCE WELLS, | ) | |
| *Petitioner*, | ) | |
| v. | ) | No. 1:24–cv–02001 (PTG/WEF) |
| CHADWICK S. DOTSON, | ) | |
| *Respondent*. | ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on Petitioner Terrence Wells' *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 6. Petitioner is challenging the constitutionality of his January 31, 2020 convictions in the Circuit Court of Prince William County, Virginia for possession with intent to distribute a Schedule I or II controlled substance; possession of a firearm while in possession of a Schedule I or II controlled substance; and possession of a firearm by a violent felon. On November 25, 2025, Respondent filed a Rule 5 Answer and a Motion to Dismiss with supporting briefs and exhibits. Dkts. 23, 24, 25. The Court advised Petitioner of his right to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Dkt. 31. Petitioner filed an opposition to Respondent's Motion to Dismiss. Dkt. 34. The matter is ripe for disposition. Dkts. 6, 24, 34. For the reasons that follow, Respondent's Motion to Dismiss will be granted, and the petition dismissed with prejudice.

**I. Background**

Mr. Wells was convicted in two separate jury trials. On March 27, 2019, a jury convicted him of possession of a firearm by a violent felon, in violation of Virginia Code § 18.2–308.2. Dkt. 25–2 (*Commonwealth v. Wells*, Case No. 18000719-00). On September 30, 2019, and October 1,

2019, a jury convicted him of possession with intent to distribute a Schedule I or II controlled substance, a third or subsequent offense, in violation of Virginia Code § 18.2–248(C); and possession of a firearm while in possession of a Schedule I or II controlled substance, in violation of Virginia Code § 18.2–304(C).[1] Dkt. 25-3, *Commonwealth v. Wells*, Case Nos. CR18000718-01, CR18000720-01. All three offenses occurred on October 25, 2017. On January 16, 2020, the circuit court sentenced Mr. Wells to an aggregate sentence of forty-two years in prison. Final judgment was entered on January 31, 2020. Dkt. 25–1.

At sentencing, the court appointed Joshua Parrett to represent Mr. Wells on appeal. Dkt. 25–1 at 3. Mr. Wells objected to Parrett's appointment as his appellate counsel. 1/16/2020 Tr. at 19–21.[2] On February 14, 2020, the court heard Parrett's motion to withdraw as Mr. Wells' appellate counsel. Case No. CR18000719-01, R. at 303–05. Mr. Wells told the trial judge that he neither "need[ed]" Parrett as appellate counsel nor needed Parrett to file a notice of appeal for him because he would "fil[e] it himself." Dkt. 25–5 at 4–5. The trial judge granted Parrett's motion, and then advised Mr. Wells of his right to appointed counsel for appeal and warned him that "the appeal process is very complicated" and "very time sensitive," and that he would "be well advised to have a lawyer" represent him. *Id.* at 6. The trial judge then asked Mr. Wells if he wanted the court to appoint another attorney to represent him on appeal or if he "wish[ed] to waive [his] right to an attorney?" *Id.* Mr. Wells responded that he did not "want [a] court appointed attorney," but then refused to sign the waiver of counsel form. *Id.* at 7–8. The court noted Mr. Wells filed a notice of appeal, as well as a motion for a writ of coram nobis, and then found that Mr. Wells

---

[1] Attorney Reginald Henderson represented Mr. Wells at his March 27, 2019, trial, and Mr. Wells represented himself, with the assistance of standby counsel Joshua Parrett, during his second trial on September 30, 2019, and October 1, 2019. Dkts. 25–2, 25–3.

[2] Mr. Wells told the trial judge he did not want Parrett as his appellate counsel or standby appellate counsel. He told the trial judge, "No. I know everything. I'm good. I got an appeal lawyer I'm talking to, so I'm good." 1/16/20 Tr. at 21. Mr. Wells told the trial judge that he did not want Parrett for his appeal: "I don't want him . . . I will take care of it myself." *Id.* at 22.

refused to sign the waiver of counsel form. Case No. CR18000719-01, R. at 305, 310–14, 318–19.[3] The court denied the writ of error coram nobis on February 21, 2020. *Id.* at 320–21.[4]

On September 30, 2020, Mr. Wells, proceeding *pro se*, filed his petition for appeal (entitled "Opening Brief") in the Court of Appeals of Virginia. *Wells v. Commonwealth*, Record No. 0344–20–4. By letter dated November 16, 2020, the Clerk of the Court of Appeals notified Mr. Wells that his petition did not comply with the following appellate rules:

- 5A:4(d): The certificate of the petition does not indicate that the document complies with the applicable word count limitation (Rule 5A:12(e)) nor does the certificate state the number of words contained in the document.
- 5A:12(c)(1): The petition does not contain assignments of error. Please note that the assignments of error must be set forth under a separate heading entitled "Assignments of Error." Please further note that merely titling a portion of the petition "assignments of error" does not constitute compliance with this Rule. This Rule defines "assignments of error" as "the specific errors in the rulings below upon which the party intends to rely." Assignments of error cannot be stated in question form; they must be stated in the affirmative. Also, the assignments of error must be stated in such a manner so as not to violate Rule 5A:12(c)(1)(ii). *See also Whitt v. Commonwealth*, 61 Va. App. 637, 647, 739 S.E.2d 254, 259 (2013) (en banc). In addition, please note that an exact reference to the pages of the transcript, written statement of facts, or record where the alleged error has been preserved in the trial court from which the appeal is taken must be included with each assignment of error.
- 5A:12(c)(4): The petition must contain a statement of facts with references [to] the pages of the record, transcript, or written statement of facts where such facts

---

[3] The transcripts had also been filed, and the trial judge ordered that Mr. Wells be given a hard copy of the transcripts. 1/16/20 Tr. at 15–16. Each of the convictions has a manuscript record, which are largely duplicates. The Court will reference the manuscript record in Case No. CR18000719-00, and page references are indicated by "R. at __."

[4] The February 21, 2020, order included the following finding regarding the waiver of counsel:

> The Court advised the defendant of [his] right to be represented by counsel and, in the event [he] wished to waive that right, the dangers of self–representation. The defendant refused to accept appointed counsel and refused to execute a waiver of counsel. The Court found that the defendant's failure to sign either a request for appointment of lawyer or a waiver of representation by a lawyer constituted a waiver of his right to representation by a lawyer.

Dkt. 25–4 at 1. Mr. Wells also indicated that he had contacted the Clerk of the Court of Appeals regarding filing a notice of appeal. Dkt. 25–5 at 9.

have been established.

- 5A:12(c)(5): The petition must indicate the standard of review to be applied with respect to each assignment of error.
- 5A:12(c)(8): The petition does not contain a certificate stating the date of mailing or delivery of the petition to opposing counsel.

Dkt. 27–1 at 48–49. Mr. Wells was given leave to file an amended petition for appeal within ten days to cure the deficiencies noted in the letter. *Id.* at 49. On December 7, 2020, he timely filed an amended petition. *Id.* at 52. On February 24, 2021, the court issued an order finding that the amended petition did not comply with several appellate rules. Specifically, Mr. Wells' amended petition

> Fail[ed] to comply with Rules 5A:12(c)(1) ("An exact reference to the page(s) of the transcript, written statement of facts, or record where the alleged error has been preserved in the trial court or other tribunal from which the appeal is taken shall be included with each assignment of error."); 5A:12(c)(4) (the statement of facts included in the petition shall contain "references to the pages of the record, transcript, or written statement of facts" where such facts have been established); and 5A:12(c)(5) ("With respect to each assignment of error, the standard of review . . . shall be stated.").

*Id.* at 61. The court granted Mr. Wells ten days to file a second amended petition that cured the defects listed in the February 24, 2021, order and warned him that failure to cure the defects could result in the dismissal of his appeal. *Id.*

On March 11, 2021, Mr. Wells filed his second amended petition for appeal. *Id.* at 62. On April 21, 2021, the court dismissed Mr. Wells' appeal, finding he had "failed to cure" the deficiencies in his amended petition "despite being given an opportunity to do so." *Id.* at 72.[5] On May 4, 2021, Mr. Wells filed a "Demand" for review by a three-judge panel, which was construed as a petition for rehearing. *Id.* at 73. On May 6, 2021, the court notified him that his petition for

[5] The deficiencies were as follows: "The petition for appeal did not contain any assignments of error or standards of review, as Rules 5A:12(c)(1) and 5A:12(c)(5) require. Nor did it contain a statement of facts with references to the pages of the record, transcript, or written statement of facts where such facts have been established, as Rule 5A:12(c)(4) requires." *Id.* at 71.

rehearing was denied because he had "not certified that [he] ha[d] provided a copy of the petition to opposing counsel," and he was given seven days to cure this deficiency. *Id.* at 79. On May 14, 2021, Mr. Wells re-filed his petition for rehearing and cured the defect. *Id.* at 80. On June 29, 2021, the petition for rehearing was denied. *Id.* at 92.

On July 28, 2021, Mr. Wells, proceeding *pro se*, filed a notice of appeal and a petition for appeal in the Supreme Court of Virginia. Dkt. 28–1 at 2, 11; *Wells v. Commonwealth*, Record No. 210717. On July 30, 2021, the Clerk notified Mr. Wells by letter that his petition for appeal was deficient because it did not certify that a copy of the petition for appeal had been sent to the Commonwealth Attorney. *Id.* at 12. Mr. Wells was directed to cure his deficiency and provide "confirmation" to the Clerk once he had done so. *Id.* Mr. Wells subsequently filed a motion to be appointed counsel on August 5, 2021; on August 11, 2021, he filed several additional attachments in support of his motion. *Id.* at 13, 17–26; Dkt. 29–1 at 10–26. On August 24, 2021, the court denied Mr. Wells' August 5, 2021, motion and the August 11, 2021 supplement. *Id.* at 27. On August 24, 2021, the Clerk reminded Mr. Wells that he had failed to provide a certificate of service and warned him that if he failed to do so by September 7, 2021, his appeal would "be referred to the Court for possible dismissal." *Id.* at 28. On August 25, 2021, Mr. Wells filed a certificate of service stating he had sent a copy of his petition for appeal to the Commonwealth Attorney on August 20, 2021. *Id.* at 29. The court dismissed his petition for appeal on December 1, 2021, finding "that the assignments of error in the petition for appeal [were] insufficient as they [did] not address any finding or ruling of the Court of Appeals or any failure of the Court of Appeals to rule on an issue . . . from which an appeal [wa]s sought." *Id.* at 47 (citing Va. S. Ct. R. 5:17(c)(1)(iii)).[6]

---

[6] Rule 5:17(c)(1)(iii) provides, in pertinent part, that:

> [a]n assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court or other tribunal from which an appeal is taken, or which merely states that the judgment or award is contrary to the law and the evidence, is not sufficient. . . . If the assignments of error are insufficient, the

On December 22, 2021, Mr. Wells filed a petition for rehearing as well as a motion for appointment of counsel. *Id.* at 49, 53. On January 7, 2022, the court denied his motion to appoint counsel. *Id.* at 58. On March 25, 2022, the court dismissed the petition for rehearing because it was not "timely filed." *Id.* at 60.

**II. State Habeas**

On November 28, 2022, Mr. Wells filed a *pro se* petition for a writ of habeas corpus in the Supreme Court of Virginia attacking the validity of his three January 31, 2020, convictions. Dkt. 29–1 at 4; (*Wells v. Edmonds,* Record No. 220797) ("Hab. R. at __"). The petition raised four claims:

I. "The trial court lacked subject matter jurisdiction to adjudicate the charges before it[] and thus lacked authority to convict and sentence [Wells]."

II. "Wells was deprived of his first right of appeal; as such his 14th Amendment Due Process of Law rights were violated."

III. "The extrinsic fraud perpetrated by the trial court (its perspicuity in the record) both pretrial and during Wells' trial, resulted in a conviction unworthy of confidence and violated petitioner's 4th, 5th, 6th, and 14th Amendment[ rights].

IV. "Code § 19.2-295 should have been applied retroactively."

Dkt. 28–1 at 7. In reviewing the state petition, the court determined that it had raised twenty-five claims, which the Court has labeled by letter for ease of reference. Mr. Wells contended that

a) "[H]e was denied the effective assistance of appellate counsel when Parrett failed to file a direct appeal despite petitioner's request. Petitioner argues that, as a result, he was left to pursue a direct appeal on his own." Dkt. 29–3 at 2.

b) "[T]he trial court committed fraud or misrepresentation by including in the sentencing order that, at all times during trial, defense counsel, 'who capably represented the defendant,' was present." *Id.* at 3.

c) "[T]he trial court denied him the opportunity to litigate claims that he was detained in violation of the Fourth Amendment and that the evidence obtained in his case was 'fruit of the poisonous tree.' Petitioner further contends this

---

petition for appeal will be dismissed.

*See Yeatts v. Angelone*, 166 F.3d 255, 264 (4th Cir. 1999) (noting "the Supreme Court of Virginia had applied [Rule 5:17(c)] numerous times prior to the date Yeatts filed his petition for appeal to refuse to address issues that were not preserved properly with specific assignments of error.").

denial constituted "extrinsic fraud" by the court and the Commonwealth." *Id.*

d) "[T]he trial judge and the clerk of the trial court conspired to 'stall, hinder, and jeopardize' petitioner's habeas corpus petition by failing to provide him, in a timely fashion, with portions of a trial transcript he requested." *Id.* at 4.

e) "[H]is prior armed robbery conviction from the District of Columbia, which the Commonwealth relied on to prove he was a violent felon, was insufficient to establish he had committed a violent crime." *Id.*

f) "[T]he Commonwealth's evidence that he possessed the firearm was 'tenuous at best' and resulted from an illegal stop." *Id.*

g) "[H]is convictions 'cannot stand' because there was no signed indictment on the charge of possession of a firearm by a violent felon prior to the start of the trial. He also claims the signature of the prosecutor on each of the indictments was fraudulent because it was not the prosecutor's true signature." *Id.*

h) "[H]e was denied the effective assistance of counsel because he 'was subjected to a continuous onslaught of court-appointed attorneys' who delayed his trials without legitimate reason, did not represent his best interests, and 'created situations' that caused him to lose faith in the attorneys." *Id.* at 4–5.

i) "[H]e was denied the effective assistance of counsel when counsel failed to make a timely request for the certificate of analysis introduced by the Commonwealth to establish petitioner possessed heroin and cocaine." *Id.* at 5.

j) "[T]he trial court and Commonwealth erred in allowing Julie Cruciotti to testify at his trial for the narcotics offenses. Petitioner asserts her testimony lacked foundation because it relied on a certificate of analysis that was not filed with the court more than 14 days prior to trial." *Id.*

k) "[H]e was denied the effective assistance of counsel when Henderson failed to provide him with copies of the indictments prior to trial and did not possess signed copies prior to trial." *Id.*

l) "[H]e was denied the effective assistance of counsel when Henderson waited until September 27, 2018, to advise him of a plea offer allegedly made on August 26, 2018." *Id.* at 6.

m) "[H]e was denied the effective assistance of counsel during Henderson's representation with respect to a 'Discovery Request and Refusal.'" *Id.*

n) "[H]e was denied the effective assistance of counsel when Henderson caused a mistrial by violating petitioner's right to testify." *Id.* at 6–7.

o) "[H]e was denied the effective assistance of counsel because Henderson failed to timely file the motion to suppress the evidence obtained from the traffic stop and subsequent interview in his trial for possession of a firearm by a violent felon. Petitioner asserts he had valid arguments that his Fourth Amendment and *Miranda* rights were violated." *Id.* at 7–8.

p) "[T]he trial court erred in denying his request to appoint new counsel to replace Parrett at his second trial." *Id.* at 8.

q) "[P]arrett provided him with ineffective assistance. In support of his claim, he cites to several exhibits attached to his petition." *Id.* at 9.

r) "[H]e was denied the effective assistance of counsel because Parrett failed to move for discovery." *Id.*

s) "[H]e was denied the effective assistance of counsel because Parrett failed to file a motion to suppress during his second trial." *Id.* at 10.

t) "[H]e was denied the effective assistance of counsel because Parrett failed to file a motion requesting the Certificate of Analysis or 'for the production of its executor.'" *Id.*

u) "H]e was denied the effective assistance of counsel because Parrett waited a month to visit him after his mistrial." *Id.*

v) "[H]e was denied the effective assistance of counsel because Parrett failed to file a petition for appeal arguing Henderson had provided petitioner with ineffective assistance at his first trial." *Id.* at 11.

w) "[H]e was denied the effective assistance of counsel because Parrett failed to prepare for trial." *Id.*

x) "[T]he trial judge repeatedly 'inserted himself' into the proceedings." *Id.*

y) "[T]he Commonwealth committed fraud by moving to admit petitioner's 1993 conviction for possession of a controlled substance with intent to distribute because, according to petitioner, the conviction was for simple possession." *Id.*

On November 22, 2023, the Supreme Court of Virginia granted Respondent's motion to dismiss the petition. Dkt. 29–3.[7] The court summarized the facts as follows:

> Petitioner's convictions arose out of a traffic stop in Prince William County. Police stopped petitioner for driving on a suspended license while he was en route to the location of a pre-arranged drug sale with a police informant. Petitioner was found in possession of 3.5 grams of cocaine—the amount the informant had arranged to purchase—and a small quantity of heroin. A firearm was recovered from a backpack on the passenger–side floor of the vehicle. Petitioner admitted the firearm belonged to him.

*Id.* at 1–2.

---

[7] On June 22, 2022, the Respondent filed his motion to dismiss the state habeas petition and attached a copy of the trial record, which included the trial transcripts, manuscript record, and exhibits. Hab. R. at 279, 300–2583.

**III. Present Petition**

On December 31, 2024, Mr. Wells, proceeding *pro se*, filed the instant § 2254 federal petition for a writ of habeas corpus, which alleges that he was deprived of the following constitutional protections:

1) Due process under the Fourteenth Amendment because the circuit court lacked subject matter jurisdiction to hear his criminal matters. Dkt. 6 at 6.

2) Due process under the Fourteenth and Sixth Amendments because he was denied a direct appeal to the Court of Appeals. *Id.* at 6–8.

3) Due process under the Fourteenth, Sixth, Fifth, and Fourth Amendments because the trial court perpetrated extrinsic fraud, including fraud in fact, fraud in the inducement, intrinsic fraud, and constructive fraud. *Id.* at 8–10.

4) Due process of law under the Fourteenth, Sixth, Fifth and Fourth Amendments because the evidence was insufficient to find him guilty. *Id.* at 10.

   The trial judge aided the Commonwealth and coerced the jury. *Id.*

   Trial counsel "placed an unsigned indictment in front of Wells after Wells was read the charge by the court clerk and Wells plead[ed] not guilty[.]" *Id.*

   The trial was closed to the public with the exception of "some middle school students." *Id.*

   Trial judge permitted a detective to "keep the firearm in his possession" and permitted another officer to demonstrate its operation. *Id.* at 10–11.

   The trial judge "practically told the jury they had to find Wells guilty to a mandatory 5 years." *Id.* at 11.

   The jury foreman had a "hearing impairment." *Id.*

5) Due process under the Fourteenth, Sixth, Fifth, and Fourth Amendments because Mr. Wells "was denied any effective assistance from any of his appointed attorneys" and was forced into self-representation. A former attorney who was removed acted as stand-by counsel for Mr. Wells, which led to him "filing his own appeal *pro se* because the attorney provided no assistance." *Id.* at 11–14.

6) Due process of law under the Fourteenth, Sixth, Fifth, and Fourth Amendments when the trial judge "showed no neutrality during the three years of presiding over Wells' cases." *Id.* at 14–15.[8]

[8] District courts "must consider claims as they are presented in the petition, reviewing them under

**IV. Statute of Limitations**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). To be properly filed, the petition must be delivered in compliance with the applicable laws and rules governing filings, including format and time requirements. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). The United States Supreme Court has emphasized that an untimely state petition is not properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005).

*A. Statutory Tolling*

Under AEDPA, a state prisoner must file his petition for a writ of habeas corpus within one year of the completion of the state court direct review process. 28 U.S.C. § 2244(d)(1)(A). In calculating the one–year period, the Court must exclude the time during which any properly filed state collateral proceeding pursued was pending. *See* 28 U.S.C. § 2244(d)(2); *see also Pace*, 544 U.S. at 417 (determining the phrase "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts).

On December 1, 2021, Mr. Wells' direct appeal in the Supreme Court of Virginia became final after his petition for rehearing was dismissed because it was not "timely filed." Dkt. No. 29–1 at 60; *see* Va. Sup. Ct. R. 5:20(b)(1) (providing that petitioners may petition for rehearing within 14 days of the dismissal of petition for appeal). Thus, his criminal judgment became final ninety days later on March 1, 2022, the date upon which his time for seeking a petition for a writ of

the applicable standard" and a district court "consider[s] only the specific claims raised in a § 2254 petition." *See Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted).

certiorari to the Supreme Court of the United States expired. Sup. Ct. R. 13(1) (allowing 90 days from entry of discretionary review in Supreme Court of Virginia to file petition for a writ of certiorari to the United States Supreme Court). Mr. Wells, absent tolling, had until Wednesday, March 1, 2023, to file his federal habeas petition.

On November 28, 2022, Mr. Wells filed his state habeas petition. At that point, 272 days of the federal statute of limitations had elapsed, which left him 93 days to file his federal petition after the state habeas proceedings concluded. In his reply, Mr. Wells "disputes" Respondent's argument that 272 days had passed before the statute of limitations was tolled. Specifically, Mr. Wells asserts that "the respondent has failed to consider the other state post–conviction applications [he had] filed in various state courts as properly filed applications 'for relief' that tolled the time calculated against the statute of limitations." Dkt. 34 at 2. Mr. Wells provides neither the dates of nor the nature of the "applications 'for relief'" that he relies upon to support his tolling argument. The record only references two state proceedings that Mr. Wells could be relying on to support a claim for tolling.

First, Mr. Wells filed a "writ of error coram nobis" in the circuit court on February 20, 2020, which was denied on February 21, 2020. He did not appeal that denial. Mr. Wells' coram nobis petition did not toll the federal statute of limitations because it was filed and dismissed before the statute of limitations began to run. R. at 311–14; 320–21.

Second, on July 25, 2022, Mr. Wells filed a Petition for a Writ of Mandamus in the Supreme Court of Virginia, which was dismissed as moot on November 18, 2022. Dkt. 6–1 at 12. On March 2, 2023, his petition for rehearing was denied.[9] *Id.* at 13. Mr. Wells' mandamus,

[9] The mandamus petition was dated June 28, 2022 but was not postmarked until July 25, 2022, which was the same day it was handed to the prison authorities to be mailed. *In re: Terrence Eugene Wells*, Record No. 220451, at 3 ("Mand. at __"); Mand. at 8–10; *see Houston v. Lack*, 487 U.S. 266, 276 (1988) (a pleading is filed at the time a prisoner delivers it to the prison authorities

however, was not an application for relief but instead sought to compel the circuit court clerk and/or a circuit court judge to adjudicate his May 6, 2022 motion, which sought another copy of the criminal trial transcripts and a few other documents. R. at 456 (Motion for Transcripts and Documents at Government Expense, filed July 21, 2022).[10]

A mandamus proceeding can be a basis for tolling only if it included habeas claims. *See Harris v. Dir., Va. Dep't of Corr.*, 282 F. App'x 239, 242 (4th Cir. 2008) (holding a properly filed mandamus petition that raised habeas claims was entitled to tolling of the federal limitations period); *cf. Wall v. Kholi*, 562 U.S. 545, 547–48 (2011) (finding a motion to reduce sentence under state law tolls the federal limitation period). The Supreme Court has held that "'collateral review' of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." *Id.* at 553; *see Moore v. Cain*, 298 F.3d 361, 367 (5th Cir. 2002) (a petitioner's state mandamus petition "did not challenge the judgment pursuant to which [the petitioner was] incarcerated," and therefore the state mandamus petition "did not toll the limitations period.").[11]

---

for forwarding to the court clerk).

[10] Mr. Wells admitted in the Memorandum he filed with his Motion for Transcripts and Documents at Government Expense that he had received a copy of his trial transcripts but alleged that there were missing pages that supported four of his habeas claims: his convictions were void *ab initio*; he was not provided with any discovery, evidence, and his indictments were not signed by the grand jury foreman; his Fourth Amendment violations were foreclosed by a "one–sided motion" during trial; and the two predicate offenses for his "prior felony conviction" were each over ten years old. R. at 458. He listed several pages from the September 30, 2019 transcript; the Certificate of Analysis and a date stamped copy of the Certificate of Analysis showing when it was filed with the Clerk; and a copy of the sentencing hearing and the order. *Id.* The mandamus petition included a copy of the portion of the motion filed in the circuit court. The portion attached to the mandamus petition listed the same alleged missing transcript pages, as well as the other items recounted herein. Mand. at 14–17.

[11] In *Hodge v. Greiner*, the Second Circuit affirmed a district court's finding that "an Article 78 proceeding to obtain additional documents concerning the investigation of his offense" did not toll the federal statute of limitations. 269 F.3d 104, 105–06 (2d Cir. 2001). The court noted:

In *Price v. Pierce*, the Seventh Circuit considered whether a motion under an Illinois state statute that provides for DNA testing (for an actual innocence claim) tolls the federal habeas statute of limitations. 617 F.3d 947 (7th Cir. 2010). The court reasoned that by filing the motion for forensic testing under the state statute, "the best that can happen is that the trial court grants the motion, the tests are performed, and the defendant receives the results." *Id.* at 952. Consequently, *Price* held that a motion for DNA testing to prove actual innocence does not toll the statute of limitations because a successful motion merely entitles the petitioner to evidence, not release. *Id.* at 952–53. Similarly, the Tenth Circuit has held that where the postconviction motion contains "no request that [a] conviction or sentence be reexamined. . . . [but] requested only information. . . . the motion did not toll AEDPA's limitations period." *Woodward v. Cline*, 693 F.3d 1289, 1293 (10th Cir. 2012) (observing that "[i]n essence the motion was a request for discovery");[12] *accord Brown v. Sec'y for the Dep't of Corr.*, 530 F.3d 1335, 1337–38 (11th Cir. 2008) (a motion for DNA testing under Florida's DNA statute "involves an application for discovery only, pursuant to which the court lacks authority to order relief from the movant's sentence or conviction based on the DNA test results. If the movant believes those results provide a basis for a successful collateral

---

> Hodge's Article 78 proceeding did not challenge his conviction. Rather, it sought material he claimed might be of help in developing such a challenge, in addition to the crime scene photographs he had already obtained. . . . if a filing of that sort could toll the AEDPA limitations period, prisoners could substantially extend the time for filing federal habeas petitions by pursuing in state courts a variety of applications that do not challenge the validity of their convictions. *See Sorce v. Artuz*, 73 F. Supp. 2d 292, 297-98 (E.D.N.Y. 1999) (denying AEDPA tolling during pendency of request for documents).

*Id.* at 107. The court further observed that "[i]f a prisoner believes he is entitled to discovery in aid of a state or federal collateral attack, *his remedy is to seek such relief from the court where a properly filed and timely collateral attack on his conviction is pending.*" *Id.* (emphasis added).

[12] In *Woodward*, the Tenth Circuit held that a prisoner's post–conviction Kansas state court motion for DNA testing was not an application for "collateral review" and therefore did not toll AEDPA's limitations period. *Id.* at 1293–94.

attack on his judgment of conviction, he may then institute a proceeding under Florida's collateral attack rules and only in that manner secure such relief.").

In Virginia, "mandamus is applied prospectively only; it will not be granted to undo an act already done." *In re Commonwealth*, 677 S.E.2d 236, 239 (Va. 2009); *Bd. of Sup'rs v. Combs*, 169 S.E. 589, 593 (Va. 1933) ("mandamus is always granted to compel the performance of some duty which has not been done . . . . It is not granted to undo an act already done. The court will not allow the validity of the act done to be tried in this way."); *see also Richlands Med. Ass'n v. Commonwealth ex rel. State Health Comm'r*, 337 S.E.2d 737, 739, 740 (Va. 1985) ("Mandamus is an extraordinary remedy employed to compel a public official to perform a purely ministerial duty imposed upon him by law," and it "may not be used as a substitute for an appeal" because it "lies to compel, not to revise or correct action, however erroneous it may have been, and is not like a writ of error or appeal, [which is] a remedy for erroneous decisions."). Mr. Wells has not alleged anything that would bring his state mandamus petition within the Fourth Circuit's *Harris* decision. To the contrary, the mandamus record indicates his state mandamus petition did not raise any habeas claims; did not challenge the judgment pursuant to which Mr. Wells is incarcerated; and did not challenge or seek to have the mandamus court review the criminal judgment. At best, the mandamus petition sought material Mr. Wells claimed might assist him in developing such a challenge. Accordingly, the state mandamus petition did not toll the federal statute of limitations. Absent equitable tolling, Mr. Wells' federal § 2254 petition is untimely.

*B. Equitable Tolling*

A petitioner "seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. Indeed, equitable tolling is available only in "rare instances

where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Green v. Johnson*, 515 F.3d 290, 304 (4th Cir. 2008).

Mr. Wells is obliged to specify the steps taken in pursuing his federal claim to demonstrate his diligence. *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001). In addition, he must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). "[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [their] control." *Menominee Indian Tribe v. United States*, 577 U.S. 250, 257 (2016) (emphasis added).

Here, Mr. Wells has not expressly sought equitable tolling, and the record before the Court does not warrant a finding that equitable tolling is applicable to this habeas petition. Mr. Wells has, however, alleged that he is "factually innocent." Dkt. 1 at 4. The Supreme Court held in *McQuiggin v. Perkins* that a convincing claim of actual innocence "may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." 569 U.S. 383, 392 (2013). This exception, however, applies only in a "severely confined category"—that is, in a case in which reliable new evidence shows that "it is more likely than not that 'no reasonable juror' would have convicted" the petitioner had the evidence been available at trial. *Id.*; *see Royal v. Taylor*, 188 F.3d 239, 243–44 (4th Cir. 1999) (to support a claim of "actual innocence," a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.") (citation omitted); *see also Bousley v. United*

*States,* 523 U.S. 614, 623 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency"); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence."). Such a gateway claim requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* Here, the evidence at trial was sufficient to sustain Mr. Wells' convictions, and no new evidence establishes a claim of actual innocence that would toll the statute of limitations.

As it pertains to Claim 1, Mr. Wells does not rely on any new evidence to establish actual innocence but instead presents a claim of "legal innocence," based upon alleged errors by the state magistrate when he issued the warrants for Mr. Wells' arrest. He alleges the magistrate violated a state statute by relying on the detective's statements to find probable cause to issue the warrants—i.e., hearsay—which he argues is not admissible to support a finding of probable cause. Mr. Wells asserts that only the victim, Eula Robinson, could provide the probable cause for a warrant. He argues that the alleged violations resulted in the general district court losing "statutory jurisdiction," that those errors prevented the circuit court from acquiring subject matter jurisdiction, and that his convictions are therefore void. Dkt. 21 at 3, 5–7. He alleges that given the defects in Claim 1 (lack of subject matter jurisdiction) and Claim 3 (extrinsic fraud), his convictions are void. Dkt. 6 at 8. Mr. Wells' argument has no merit.

First, probable cause for the issuance of a warrant may be based upon hearsay. *See Franks v. Delaware*, 438 U.S. 154, 165 (1978) ("probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own

knowledge that sometimes must be garnered hastily"); *see, e.g., United States v. Castillo*, 866 F.2d 1071, 1077 (9th Cir. 1988) ("A magistrate may consider hearsay statements in an affidavit in determining whether there is probable cause to believe that a person is guilty of a crime."); *United States v. Bizzard*, 674 F.2d 1382, 1388 (11th Cir. 1982) ("an affidavit may be based on hearsay information and need not be based on the personal observation of the affiant") (citing *Aguilar v. Texas*, 378 U.S. 108 (1964)).

Second, Mr. Wells' convictions resulted from grand jury indictments, not the warrants issued by the magistrate. In Virginia, an indictment is valid if it is returned by the grand jury and the name of the witness who provided testimony to the grand jury is included at the foot of the indictment. *See* Va. Code Ann. § 19.2-202. Mr. Wells' indictments were returned as "True Bills," signed by the foreperson, and returned by the Clerk, and the name of witness Detective J. Patterson is affixed at the foot of each indictment. Therefore, the indictments complied with § 19.2-202.

Lastly, the Fourth Circuit has previously rejected a habeas petitioner's assertion that a state court lacked jurisdiction to convict the petitioner, finding that the issue of jurisdiction was one of state law. *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (citing *Wills v. Egeler*, 532 F.2d 1058 (6th Cir. 1976); *U.S. ex rel. Roche v. Scully*, 739 F.2d 739, 741 (2d Cir. 1984)).[13] In accord with *Wright* and the authorities upon which it relied, the determination of a state court's jurisdiction involves a matter of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Accordingly, it is clear that Claim 1 just alleges, without merit, legal errors—not claims of actual

[13] *Wills* held that a "determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." 532 F.2d at 1059. *Roche* held that "no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from the provisions of state law." 739 F.2d at 741–42.

innocence. Likewise, Claims 2, 3, 5 and 6 allege errors at trial and on appeal that are based upon the record and do not provide a basis to support a claim of actual innocence.

Mr. Wells' final claim, Claim 4, arguably asserts a claim of innocence based upon his conclusory argument that the evidence was insufficient. However, a summary of the record evidence from each trial establishes that it was sufficient to substantiate his guilt.

On March 27, 2019, a jury convicted Mr. Wells of possession of a firearm by a violent felon. Dkt. 25–2. Detective B.R. Couch testified that on October 25, 2017, he stopped the vehicle Mr. Wells was driving because he had identified Mr. Wells as the driver and confirmed that his license was suspended. 3/27/19 Tr. at 90–93. Detective Couch confirmed that the driver was Mr. Wells after the vehicle was stopped. Mr. Wells was subsequently arrested for another matter discovered during the stop, and the vehicle was searched. *Id.* at 94–95. During the search, Detective Couch found "a Smith and Wesson .22 caliber pistol" inside a black backpack found on the front passenger seat. *Id.* at 95. After Mr. Wells had been advised of his rights and stated that he understood them, Mr. Wells stated "that he [had] bought the gun and did not believe that it was stolen—did not think it was stolen." *Id.* at 98. Mr. Wells subsequently invoked his right to remain silent and Detective Couch ceased questioning; without being asked a question, Mr. Wells told Detective Couch that "he knew that he was going to jail for a long time." *Id.* at 99. Detective Couch test-fired the pistol, which worked properly. *Id.* at 104–05. The trial judge admitted a certified copy of Mr. Wells' 1984 prior conviction for armed robbery. *Id.* at 108–09; Comm. Ex. 1.

On cross-examination, Detective Couch testified that he did not submit the pistol for fingerprint examination because "Mr. Wells admitted ownership of the firearm." *Id.* at 112.[14]

---

[14] In summarizing the evidence during the state habeas proceeding, the Virginia Supreme Court

Detective Couch also testified that he found "an XM® Radio statement belonging to Mr. Wells," with "his name on it," inside the backpack. *Id.* at 113. The evidence was found sufficient to sustain Mr. Wells' conviction for possessing a firearm, in violation of § 18.2-308.2.[15]

During the second trial, a jury convicted Mr. Wells of possession with intent to distribute a Schedule I or II controlled substance, third or subsequent offense, in violation of Virginia Code § 18.2–248(C), and possession of a firearm while in possession of a Schedule I or II controlled substance, in violation of Virginia Code § 18.2–308.4(C). The evidence at the second trial with respect to the possession of a firearm (a Smith and Wesson .22 caliber pistol) established that Mr. Wells possessed the firearm. 9/30/2019 Tr. at 145–49. The testimony included Mr. Wells' statements to Detective Couch "that he [had] bought the gun and did not believe that it was stolen—did not think it was stolen," and that "he knew that he was going to jail for a long time." *Id.* at 148-49;[16] *see also* Comm. Ex. No. 6.

Regarding the cocaine, Detective Couch testified that Mr. Wells had approximately 3.24 grams of cocaine in his left hand when he got out of the car and had $92.00 cash in his right hand. *Id.* at 156, 166, 171, 176.[17] Mr. Wells also had $1,900 in the pockets of his shorts when he was

---

found that "Petitioner admitted the firearm belonged to him." Dkt. 29–3 at 1–2.

[15] In order to sustain a conviction under § 18.2-308.2, "the evidence need show only that a person subject to the provisions of that statute possessed an instrument which was designed, made, and intended to expel a projectile by means of an explosion." *Armstrong v. Commonwealth*, 263 Va. 573, 584, 562 S.E.2d 139, 145 (2002). The evidence does not need to show "that the instrument was 'operable,' 'capable' of being fired, or had the 'actual capacity to do serious harm." *Id.*

[16] Detective Hunt testified that on the afternoon before the stop he saw an interaction between Mr. Wells and an unnamed female. The two walked a short distance, then Mr. Wells left and went into the woods nearby. When he returned, Mr. Wells and the female interacted in a manner, which based upon the Detective's training and experience, suggested a "possible narcotics transaction." *Id.* at 121.

[17] At trial, the amount of cocaine is sometimes referred to as being "3.5 grams." 9/30/2019 Tr. at 144, 193–94. The Division of Forensic Sciences weighs the drugs it tests without the packaging, and "3.2 grams is close to what is referred to on the street as an eight-ball, which is an eighth of

arrested. *Id.* at 158. Julie Cruciotti, an analyst with the Virginia Department of Forensic Science, testified on the basis of her analysis and expertise that the drugs recovered were cocaine. *Id.* at 202–07; Comm. Ex. Nos. 3, 5.

The prosecution also submitted a July 23, 1991 conviction in Arlington County Circuit Court for distribution of cocaine, in violation of Virginia Code § 18.2-248, and a March 1, 1993 conviction in the Fairfax County Circuit Court for possession with intent to distribute cocaine, in violation of Virginia Code § 18.2-248. Comm. Ex. Nos. 1, 2; 9/30/2019 Tr. at 113–14. The evidence established that Mr. Wells had two previous convictions for violating Virginia Code § 18.2-248, and that he possessed the cocaine with the intent to distribute while possessing a firearm.

Mr. Wells testified in his case in chief and admitted that he had been convicted of the two prior drug offenses; that he was unlawfully driving the car that day; that he knew there was a gun in the car; and that he knew there were drugs in the car but denied they were in his hand. *Id.* at 239-41, 242. For all the foregoing reasons, the Court finds that there is no valid argument for actual innocence, the petition is untimely, and it will be dismissed.

**V. Certificate of Appealability**

According to Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. 11(a), Rules Governing Section 2254 Cases U.S. District Courts; *see also* 28 U.S.C. § 2253(c)(1)(A) (prohibiting an appeal to the respective court of appeals from a final order concerning a habeas corpus petition "[u]nless a circuit justice or judge issues a certificate of appealability"). A certificate of appealability ("COA") will not issue absent "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This requirement is satisfied only when

---

an ounce or 3.5 grams." *Id.* at 194.

"reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Where a district court dismisses a petition solely based on procedural grounds, and does not address the underlying constitutional claims, *Slack* instructs the court to issue a COA only when the petitioner demonstrates that "jurists of reason" would find both the petition's "claim of the denial of a constitutional right" and the district court's dispositive procedural ruling "debatable." *Id.* at 484. As to whether the procedural ruling is "debatable," *Slack* further advises that when the procedural bar present is "plain" and "the district court is correct to invoke it to dispose of the case," jurists of reason could not find "that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.*

Here, the petition will be dismissed because Mr. Wells failed to file his federal petition for a writ of habeas corpus within a reasonable time after the enactment of the one-year statute of limitations permitted under 28 U.S.C. § 2244(d)(1). Where such "a plain procedural bar is present[,]" this Court finds that "jurists of reason" would not and could not "find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Thus, this Court will not issue a COA to Mr. Wells.

Mr. Wells may, however, seek a COA from the United States Court of Appeals for the Fourth Circuit. Where a district court denies a COA, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." R. 11(a), Rules Governing Section 2254 Cases U.S. District Courts.

## VI. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss (Dkt. 24) is **GRANTED**, and an appropriate Order and judgment shall be issued.

Entered this 30th day of September, 2026.
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge